## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE:                                                    CASE NO. 15-09787  (MCF)

**VACA BRAVA OLD SAN JUAN, LLC.**                         **CHAPTER 11**

    Debtor

---

**VACA BRAVA OLD SAN JUAN, LLC.**

    Plaintiff                                          **ADVERSARY CASE No. 15-00293**

    V.

**PUERTO RICO
TREASURY DEPARTMENT**

    Defendant

---

## OPINION AND ORDER

Before the Court is a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure from the Puerto Rico Treasury Department (hereafter "Defendant") seeking the dismissal of this adversary complaint filed by Vaca Brava Old San Juan LLC (hereafter "Plaintiff") for: (1) an alleged violation of the automatic stay under 11 U.S.C. § 362, (2) protection against discriminatory treatment under 11 U.S.C. § 525(a), (3) actual and monetary damages under 42 U.S.C. § 1983 and (4) punitive damages, attorney's fees and costs under 11 U.S.C § 362.[1] The Court adopts as true the factual allegations of the complaint for the sole purpose of the motion before us. For the reasons stated herein, the Court grants in part and denies in part Defendant's motion to dismiss and as a result, the adversary case shall continue.

---

[1] "Unless otherwise indicated, all statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (the "Bankruptcy Code")."

-1-

## **FACTS AND PROCEDURAL HISTORY**

1. On December 10, 2015, at 6:19 p.m., the Plaintiff filed a voluntary petition under Chapter 11.

2. On that same day, at 6:25 p.m. Defendant's agents arrived at the Plaintiff's premises to collect a purported debt of $208,368.58, of which $194,899.29 is alleged sales and use tax debt (hereafter "IVU" for its Spanish initials).

3. Plaintiff alleges that even though it notified the agents about the Chapter 11 petition filing, Defendant proceeded, at that moment, to cancel and collect Plaintiff's alcoholic beverage license for failing to pay the mentioned debt.

4. Subsequently, Plaintiff filed a Complaint and an Urgent Motion Seeking Temporary Restraining Order and Injunction asking for a declaratory and injunctive relief for violation of the automatic stay (§ 362) and discriminatory treatment (§ 525(a)). Plaintiff also requested compensatory and punitive damages, attorney's fees, and costs pursuant to § 362(k).

5. On December 14, 2015, Plaintiff's temporary restraining order against Defendant was denied for failure to prove an irreparable injury.

6. On December 22, 2015, after a preliminary injunction hearing, the court ordered Defendant to (1) cease any action to withhold or revoke Debtor's license to sell alcoholic beverages and (2) restore possession of the license and any other document needed for said possession within 24 hours. The injunctive relief's duration was conditioned to Debtor's post-petition remittance of taxes withheld as fiduciary agent to the Treasury.

7. Plaintiff alleges that cancelation of alcoholic beverage license prevented the Plaintiff from generating substantial economic revenue during the holiday season.

8. On December 24, 2015, Plaintiff filed an amended complaint adding that on December 15, 2015, five days after the Chapter 11 petition was filed, Defendant levied the amounts of $1,462.26 and $1,639.46 from its Banco Popular accounts #011-691098 and #011-665378, respectively.

9. On April 8, 2016, Plaintiff filed a second amended complaint to add that the Puerto Rico Treasury Department Secretary had appeared in numerous public forums dissuading consumers from sponsoring Plaintiff's restaurant operations. Plaintiff contends that these expressions caused a direct negative impact of Plaintiff's income and public image. Plaintiff also added a cause of action for actual and monetary damages under 42 U.S.C. § 1983.

10. Plaintiff estimates its expenses, costs, and loss of income due to Defendant's actions in no less than $60,000.

11. On May 25, 2016, Defendant filed a Motion to Dismiss for Eleventh Amendment immunity, failure to state a claim, and unavailability of a 42 U.S.C. § 1983 remedy.

12. Plaintiff filed an Opposition to the Motion to Dismiss on July 1, 2016.

## APPLICABLE LAW AND LEGAL ANALYSIS

### I. MOTION TO DISSMISS FOR FAILURE TO STATE A CLAIM

When a court evaluates a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), its duty is to determine whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007).

Pursuant to Fed. R. Civ. P. 8.1, pleadings must contain: "(1) a short and plain statement of the grounds for the court's jurisdiction,… ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." A **short and plain** statement "needs only enough detail to provide a defendant with 'fair notice of what the ... claim is and the grounds upon which it rests'." Ocasio Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (citing Twombly, 550 U.S at 555). This rule does not require "detailed factual matter," just sufficient factual allegations that tend to make more plausible the plaintiff's claim to a remedy. Plausibility must not be confused with

probability, but it does mean something more than a mere possibility. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 557.

Under a Rule 12(b)(6) test, the court must first distinguish factual from conclusory allegations. Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015). In other words, the court must disregard those that merely offer, "legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Ocasio Hernandez, 640 F.3d at 12; Iqbal, 556 U.S. at 678. Factual allegations that are plausible on their face, on the other hand, are those that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009); Iqbal, 556 U.S. at 678.

After disregarding those conclusory allegations, the court "must take all of the factual allegations in the complaint as true." Iqbal, 556 U.S. at 678. "The sole inquiry under Rule 12(b)(6) is whether, construing the well-pleaded facts of the complaint in the **light most favorable** to the plaintiffs, the complaint states a claim for which relief can be granted. Ocasio Hernandez, 640 F.3d at 7 (emphasis ours). During this stage of the review, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); 2-12 James Wm. Moore et al., Moore's Federal Practice § 12.34 (3d. ed., 1997-date). Thus, dismissal will be proper if the complaint lacks an allegation regarding an element necessary to obtain relief. Moore's Federal Practice at § 12.34(4)(a). It is also appropriate "when a successful affirmative defense or other bar to relief on the claim is conclusively established on the face of the complaint. *Id.* at § 12.34(4)(b). Unlike a dismissal for lack of jurisdiction, a dismissal for failure to state a claim upon which relief can be granted is a "**judgment on the merits,**" banning the parties from relitigating the issues resolved. Federated Dep't Stores v. Moitie, 452 U.S. 394 (1981).

## II. ELEVENTH AMENDMENT IMMUNITY

We first examine Defendant's allegations that money damages claims against it are barred by Eleventh Amendment Immunity (Docket No. 46, at 6).

The Eleventh Amendment of the Constitution of the United States reads:

> The Judicial power of the United States shall not be construed to extend to any suit in law or Equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court has clarified that this immunity includes not only suits brought by citizens against another state, but also suits commenced by citizens against their own state. Hans v. Louisiana, 134 U.S. 1, 15 (1890). The Supreme Court has also stated that the Eleventh Amendment bars suits against a state's agencies or departments. Penhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). In addition, many First Circuit cases have long held that Puerto Rico enjoys Eleventh Amendment immunity. See Torres-Alamo v. Puerto Rico, 502 F.3d 20, 24 (1st Cir. 2007); Acevedo Lopez v. Police Dept. of Com. Of Puerto Rico, 274 F.3d 26, 28 (1st Cir. 2001); Ramirez v. Puerto Rico Fire Service, 715 F.2d 694, 697 (1st Cir. 1983); Ezratty v. Puerto Rico, 648 F.2d 770, 776 (1st Cir. 1981).

However, sovereign immunity is not absolute and may be waived by the State or abrogated by Congress. In order to eliminate sovereign immunity under the Eleventh Amendment, Congress must "unequivocally express its intent to abrogate the immunity" and act "pursuant to a valid exercise of power." Tennessee v. Lane, 541 U.S. 509, 517 (2004); Arecibo Community Health Care, Inc. v. Commonwealth of Puerto Rico, 270 F.3d 17, 24 (1st Cir. 2001).

Section 106(a)(1) of the Bankruptcy Code abrogates sovereign immunity with respect to the following sections of the Code:

> (1) Sections 105, 106, 107, 108, 303, 346, **362**, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, **525**, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

11 U.S.C. § 106(a)(1) (emphasis ours).

Section 106 also provides that "[t]he court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, **but not including an award of punitive damages**…." Id. at § 106(a)(3) (emphasis ours). It also abrogates sovereign immunity with respect to governmental units that have filed a proof of claim, "with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose." Id. at § 106(b).

It is clear that Defendant's damages claims under sections 362 and 525 of the Bankruptcy Code are not barred by the Eleventh Amendment's Immunity. Congress unequivocally expressed its intent and acted pursuant to its powers to abrogate sovereign immunity when it passed the Bankruptcy Reform Act of 1994, which amended Section 106 to overrule Hoffman v. Connecticut Department of Income Maintenance, 492 U.S. 96 (1989) and United States v. Nordic Village, Inc., 503 U.S. 30 (1992)[2]. Section 106(a), as amended, clearly abrogates sovereign immunity in relation to violation of the automatic stay and anti-discrimination provision claims. Furthermore, unlike what Defendant claims in its Motion to Dismiss (Docket No. 46, at 10), it filed two Proofs of Claim in the main bankruptcy case (Bankruptcy Case No. 15-0978; Claims 13-1 & 14-1). Thus, the Defendant's Motion to Dismiss cannot be granted on an Eleventh Amendment Immunity defense.

### III.    VIOLATION OF STAY

The Court proceeds to examine Plaintiff's allegations that Defendant's agents violated the automatic stay.

The filing of a bankruptcy petition operates as an injunction that stays all attempts to recover a claim against the debtor or property of the estate. Section 362(a) of the Code enumerates all the

---

[2] These Supreme Court decisions held that the former section 106(c) did not state clearly a congressional intent to abrogate sovereign immunity.

-6-

actions that are enjoined once the petition is filed, which include: the commencement or continuation of proceedings against the debtor to recover a claim that arose before the commencement of the case, any act to obtain possession of or exercise control over property of the estate, any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case, and the setoff of any debt against the debtor that arose before the commencement of the case. 11 U.S.C. § 362(a)(1), (3), (6) & (7).

"Formal service of process is not required, and no particular notice need be given in order to subject a party to the stay." Collier on Bankruptcy, ¶362.02. "A party that has received notice of the bankruptcy case, even if only oral notice, can be sanctioned for violation of the stay." Id.

It has long been affirmed by the courts that a liquor license owned by the debtor before the filling of the petition is property of the estate. In re The Ground Round, Inc., 482 F.3d 15, 17-18 (1st Cir. 2007); In re Nejberger, 934 F.2d 1300, 1302 (3rd Cir. 1991); In re Hoffman, 65 B.R. 985, 986 (D.R.I. 1986). Property of the estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). On the other hand, courts have also held that an act to levy a debtor's account after the filing of the bankruptcy petition is a willful violation of the automatic stay. In re Davis, 201 B.R. 835, 837 (Bankr. S.D. Ala. 1996); Gonzalez v. Puerto Rico Treasury Dep't., 532 B.R. 1, 6 (D.P.R. 2015) & In re Price, 42 F.3d 1068, 1071 (7th Cir. 1994) (where notice of intent of levy was considered violation of the stay).

In this case, Plaintiff claims Defendant violated § 362 when its agents collected Plaintiff's liquor license and when they levied two Banco Popular accounts five days after the stay was imposed (Docket No. 36, at 2). According to the Amended Complaint, Plaintiff filed for bankruptcy on December 10, 2015, at 6:19 p.m. That same day, at 6:25 p.m., agents from the Treasury Department arrived at Plaintiff's premises to collect IVU debt. Plaintiff claims that, even though the agents were informed about the filing, they removed the liquor license from the restaurant. Plaintiff asked for the

-7-

license back but the agents refused. Five days later, Defendant levied the amounts of $1,462.26 and $1,639.46 from Debtor's bank accounts.

Taking the aforementioned allegations as true, as Rule 12(b)(6) dictates, Defendant has asserted a cause of action for violation of the automatic stay, and thus Plaintiff may be entitled to relief under § 362(k). Therefore, dismissal of this claim for failure to state a cause of action is denied.

## IV. ANTI-DISCRIMINATION PROVISION

We now turn to Plaintiff's allegations that Defendant's actions were discriminatory, in clear violation of §525(a).

Section 525 of the Bankruptcy Code, also known as the "anti-discrimination provision", protects debtors under the Code from various forms of discrimination from governmental units. Section 525(a) states the following:

> … **a governmental unit may not** deny, **revoke**, suspend, or refuse to renew **a license**, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title … , **solely because such bankrupt or debtor is or has been a debtor under this title** … , has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or **has not paid a debt that is dischargeable** in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(a) (emphasis ours).

Section 525(a) codifies the Supreme Court's holding in Perez v. Campbell, 402 U.S. 637 (1971), where it held that a state may not refuse to renew the driver's license of a debtor whose tort judgment, resulting from an automobile collision, was discharged. Collier on Bankruptcy ¶525.02.

Plaintiff alleges in its Amended Adversary Complaint it filed a voluntary petition under Chapter 11 on December 10, 2015, at 6:19 p.m. That same day at 6:25 p.m., Defendant's agents arrived at Plaintiff's premises to collect IVU debt. Plaintiff further claims that even though Defendant knew about the bankruptcy filing, it cancelled Plaintiff's alcoholic beverage license. Plaintiff also asserts in his Amended Adversary Complaint that Defendant was prohibited by

§ 525(a) from taking its liquor license for "**failure to make timely payments** to PR Treasury." Docket No. #36 at 5. It also contends that Defendant violated the anti-discrimination provisions of § 525(a) by revoking its liquor license "solely because of the **existence of an antecedent debt** with the Treasury Department." Id. at 6. In other words, Plaintiff argues that Defendant violated § 525(a) because it revoked its liquor license after it failed to pay IVU debt. In its Amended Adversary Complaint, Plaintiff did not plead that the liquor license was revoked for the sole reason of filing bankruptcy or for being insolvent.

In order for such argument to succeed, the debt in question must be dischargeable. See Federal Communications Comm'n v. NextWave Personal Communications, 537 U.S. 293 (2003) (where Supreme Court found that Debtor's broadband personal communications licenses had been revoked solely because of the debtor's failure to pay a **dischargeable debt** and Debtor's argument was precisely that its licenses were canceled solely because it **failed to pay** dischargeable debts); In re Stoltz, 315 F.3d 80 (2002) (where public housing authority sought to evict a debtor based upon failure to pay prepetition rent that had been **discharged** in bankruptcy); Collier on Bankruptcy ¶525.02[2]. In sum, § 525(a) does not bar discrimination based upon nonpayment of a debt that is **not dischargeable**. Collier on Bankruptcy ¶525.02.

Pursuant to § 523(a)(1)(A) of the Code, the taxes specified in § 507(a)(8) are exempted from discharge. Exempted taxes include: taxes on income or gross receipts, property taxes, taxes required to be collected or withheld, employment taxes, excise taxes, and customs duty. Plaintiff's IVU tax debt is not dischargeable because it is a **tax required to be collected**. This category of taxes "covers the so-called 'trust fund' taxes, i.e., income taxes than an employer must withhold from the pay of employees, as well as the employer's share of Social Security taxes, **and sales taxes paid by the debtor's customers that the debtor is required to remit to a governmental unit.**" Collier on Bankruptcy, ¶523.07[2][d]. Plaintiff's IVU tax debt is not dischargeable and, therefore, not subject to § 525(a) protection.

Plaintiff rightly mentions in its Opposition to Motion to Dismiss Complaint that the Court concluded in a preliminary injunction hearing that the act of taking the liquor license occurred after Plaintiff had filed for bankruptcy. At that hearing, both parties presented testimony regarding the events prior to the taking of the license and up to the moment of revocation. As determined by the Court, the Director of the Consumer Tax Bureau had informed Plaintiff the Treasury Department's intention to revoke its liquor license if 50% of the amount owed was not paid immediately and the remaining balance within 90 days. This meeting was held at 11:15 a.m. on the day of the revocation. At 4:00 p.m., that same day, Plaintiff met with the Director's supervisors to reaffirm his offer of $30,000. The offer was rejected. At 6:25 p.m. Defendant's agents arrived at Plaintiff's premises to collect the liquor license as they had announced. These findings of fact show that Defendant's sole purpose for revoking the liquor license was not Plaintiff's bankruptcy, since the Department had already announced its intention, earlier that day, to revoke the license if the plan proposed was not accepted. This intention to revoke had nothing to do with Plaintiff's bankruptcy petition. The Defendant did not revoke Plaintiff's alcoholic beverage license **because of** their bankruptcy filing, they revoked **in spite** of it. Even if Plaintiff had not filed bankruptcy, the Defendant would have revoked the license.

Nevertheless, when deciding on a Rule 12(b)(6) motion, the court must only consider the factual allegations provided in Plaintiff's amended complaint. For these reasons, dismissal of this claim for failure to state a cause of action is granted because § 525(a) claim does not arise upon failure to pay a non-dischargeable IVU tax debt.

## V. DAMAGES UNDER 42 U.S.C. § 1983

We now discuss Plaintiff's claim that violations of the Bankruptcy Code give rise to a cause of action under 42 U.S.C. § 1983.

Section 1983 of Title 42 of the United States Code provides a remedy against violation "under the color" of state law of "any rights, privileges, or immunities secured by the Constitution

and laws." 42 U.S.C. § 1983. However, this does not mean that any violation of any law of the United States gives rise to a § 1983 claim. The Supreme Court has outlined a two-step inquiry when determining if a plaintiff may litigate a § 1983 claim. First, the plaintiff must assert the violation of a federal right; and then, the defendant may show that Congress "specifically foreclosed a remedy under § 1983" by providing a "comprehensive enforcement mechanism for protection of a federal right." Smith v. Robinson, 468 U.S. 992, 1005 (1984); In re Potter, 354 B.R. 301, 315 (Bankr. N.D. Ala. 2006) (citing Middlesex County Sewerage Authority v. National Sea Clammers Assn., 453 U.S. 1 (1981)). The existence of express remedies "demonstrates not only that Congress intended to foreclose implied private actions but also that it intended to supplant any remedy that otherwise would be available under § 1983." Middlesex County Sewerage Authority, 453 U.S. at 21.

In this case, Plaintiff argues that because the Bankruptcy Code is a law of the United States and the violation of the stay was an action under color of state law, it is entitled to damages pursuant § 1983. We disagree. The Bankruptcy Code provides a comprehensive enforcement mechanism for Code violations. Section 362(k) provides for "actual damages, including costs and attorney's fees" for violations of the automatic stay, and adds punitive damages in cases of willful violation. 11 U.S.C. § 362(k). In addition, § 105 states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title". 11 U.S.C. § 105. The availability of specific remedies provided in the Bankruptcy Code precludes any action under § 1983. For the reasons stated above, Defendant's request for dismissal of the § 1983 claim is granted.

**VI.    PUNITIVE DAMAGES, COSTS AND ATTORNEY'S FEES**

Finally, we address Plaintiff's claims for punitive damages, costs and attorney's fees under §362(k).

Section 362(k) allows a court to grant punitive damages in cases of willful violation of the automatic stay. "A debtor seeking damages under this section bears the burden of proving by a preponderance of the evidence the following three elements: (1) that a violation of the automatic stay

occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." In re Lopez, 492 B.R. 595, 607 (D.P.R. 2013) (citing Slabicki v. Gleason (In re Slabicki), 466 B.R. 572, 577–578 (B.A.P. 1st Cir. 2012)).

In order to prove a willful violation, the Plaintiff must prove that Defendant knew about the stay and intended the actions which constituted the violation. Id. (citing Fleet Mortgage Group v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999)). Defendant must show it provided creditor with actual notice of the stay. Once this is proved, "courts must presume that the violation was deliberate." Id. However, the Code limits the parties against whom punitive damages can be claimed. Section 106(a)(3) enjoins the court from issuing an award of punitive damages against a governmental unit. However, there is no prohibition on courts granting costs and attorney's fees.

Therefore, Defendant's motion to dismiss is granted regarding punitive damages, but denied as to possible costs and attorney's fees.

### CONCLUSION

Based on the aforementioned conclusions of law, Defendant's motion to dismiss is GRANTED as to claims under the anti-discrimination provision of § 525, damages under 42 U.S.C. § 1983 and punitive damages under § 362(k) and DENIED as to the Eleventh Amendment Immunity defense and claims of violation of the automatic stay and costs and attorney fees under § 362.

IT IS SO ORDERED.

In San Juan Puerto Rico, this 27th day of October, 2016.

_____
MILDRED CABAN FLORES
U.S. Bankruptcy Judge